UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

RAY ROSAS, *et al*, §
 §
 Plaintiffs, §
VS. § CIVIL ACTION NO. 2:17-CV-70
 §
THE CITY OF CORPUS CHRISTI, *et al*, §
 §
 Defendants. §

### ORDER ON THE CITY OF CORPUS CHRISTI'S
### MOTION FOR SUMMARY JUDGMENT

After an investigation, the Corpus Christi Police Department (CCPD) sought the arrest of Santiago Garcia, Jr., a suspected drug dealer who had conducted illegal narcotics transactions with a CCPD officer from the home of his grandmother, Virginia Rosas. This action is based on injuries allegedly suffered in the course of a CCPD Special Weapons and Tactics (SWAT) Team raid of the Rosas residence, involving the execution of an arrest/search warrant on a no-knock basis using flash-bang distraction devices and a full SWAT Team. Virginia Rosas and the other family members who were caught up in the raid have sued the City of Corpus Christi, along with the SWAT Team officers, complaining of excessive force, cruel and unusual punishment, unlawful arrest and detention, malicious prosecution, and assault. D.E. 1.

Before the Court is the City of Corpus Christi's motion for summary judgment, seeking to eliminate all claims asserted against it. D.E. 46. Also before the Court are Plaintiffs' response and the City's reply. D.E. 61, 76. For the reasons set out below, the

Court GRANTS the motion and DISMISSES the claims addressed in the motion. A single unaddressed claim appears to remain.

## DISCUSSION

Pursuant to 42 U.S.C. § 1983, Plaintiffs allege constitutional claims against all Defendants (the City and its police officers), without distinction, including:

1. Excessive force in the restraint, arrest, and custody of Plaintiffs;
2. Excessive force in deploying and using a flash-bang device, contrary to CCPD policy, contrary to the manufacturer's instructions, in the wrong room, and without being able to see into the room to assess risks;
3. Cruel and unusual punishment of Plaintiff Ray Rosas during pretrial detention, based upon false accusations and prolonged solitary confinement;
4. Deliberate indifference to Plaintiff Ray Rosas's medical condition while in custody;
5. Unlawful seizure of Plaintiffs; and
6. Malicious prosecution.

D.E. 1. Pursuant to Texas state law, Plaintiffs again allege malicious prosecution against all Defendants. As to the individual Defendants only, they allege the state law claim of assault.[1]

Specifically as to the City of Corpus Christi, Plaintiffs allege:
1. Failure to supervise CCPD officers;
2. Failure to train CCPD officers;
3. Failure to discipline CCPD officers who violate policies and procedures; and
4. Acquiescence in the unconstitutional behavior of CCPD officers, including failure to discipline and creating a practice or custom of unconstitutional police conduct with respect to all of the § 1983 claims set out above.

---

[1] Plaintiffs allege assault and battery. Under Texas law, an assault charge subsumes within its scope a charge of battery. Tex. Penal Code § 22.01.

In ten separate motions, Defendants each seek summary judgment dismissing the claims against them. This Order addresses only the motion filed by the City.

### A. Malicious Prosecution

The City seeks summary judgment on the malicious prosecution claim brought through § 1983 because there is no freestanding constitutional right to be free from malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 942, 945 (5th Cir. 2003) (en banc). Rather, claims for wrongful pretrial seizure must be pursued under the Fourth Amendment; claims for the manufacture of evidence and use of that evidence, along with reliance on perjured testimony to obtain a conviction, are Fourteenth Amendment due process claims. They are not malicious prosecution claims that attempt to give state law elements constitutional proportions. *Id*.

Plaintiffs have not briefed any response to this issue and the City is correct in its analysis of the federal claim. Consequently, the court GRANTS IN PART the motion for summary judgment and DISMISSES the federal malicious prosecution claim as alleged against the City. However, the City's motion does not challenge the Texas state law claim for malicious prosecution and Plaintiffs' response is silent on that issue. While it is unclear whether Plaintiffs intended to make the state law claim against the City, its separate nature precludes the Court from addressing it on the current briefing. *See generally*, *DeLeon v. City of Dallas*, 141 F. App'x 258, 263 (5th Cir. 2005) (while *Castellano* precludes a federal malicious prosecution claim, it does not affect a state law claim, which will not be disturbed absent proper briefing).

## B. Cruel and Unusual Punishment

Defendant City of Corpus Christi seeks summary judgment on the cruel and unusual punishment claim brought under the Eighth Amendment because Plaintiffs were pretrial detainees and that particular claim applies only to convicted prisoners. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (basic human needs of a pretrial detainee are covered by procedural and substantive due process rights under the Fourteenth Amendment). Plaintiffs did not respond to this narrow issue. The Court agrees that Plaintiff Ray Rosas's claim is for events that took place during his pretrial detention and thus cannot be brought pursuant to the Eighth Amendment. Therefore, summary judgment is GRANTED IN PART and the Eighth Amendment claim is DISMISSED as against the City.

However, Plaintiff Ray Rosas may bring a claim for poor treatment as a state pretrial detainee under the procedural and substantive due process provisions of the Fourteenth Amendment. The City has not suggested that the removal of the reference to the Eighth Amendment is fatal to the factual claim of poor treatment and the invocation of constitutional guarantees, generally. Plaintiffs' complaint regarding conditions of confinement is cognizable, as the Fourteenth Amendment rights of a pretrial detainee are at least as great as those of a convicted prisoner who sues under the Eighth Amendment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

While the City seeks to limit the rights of pretrial detainees to prohibitions against self-incrimination and double jeopardy, courts have held that "the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards

for pretrial detainees . . . ." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992). It is inappropriate for the conditions of confinement to operate to punish a person who has not been convicted of a crime. *Bell v. Wolfish*, 441 U.S. 520, 531-40 (1979). Yet those conditions may include restrictions attendant to the legitimate operational concerns of an incarcerating facility. *Id*.

Therefore, despite the City's challenge to the Eighth Amendment claim, the Court –for the moment—retains Plaintiffs' parallel complaint for due process violations during Ray Rosas' pretrial detention. Fact questions relevant to the assessment of such a claim have not been briefed or shown to be eliminated as a matter of law at this juncture. Unless eliminated by the requirements of municipal liability as set out below, those Fourteenth Amendment claims remain.

### C. Municipal Liability for Excessive Force, Poor Treatment of Pretrial Detainee, and Unlawful Seizure

#### 1. The Requirement of a Policy

The City seeks protection from liability for the actions of its employees or agents pursuant to the holding in *Monell v. New York Department of Social Services*, 436 U.S. 658, 694 (1978). It is well-settled that the City does not have respondeat superior liability for allegedly unconstitutional conduct of its law enforcement personnel. *Id*. at 691. Instead, to establish liability, Plaintiffs must not only show that the personnel in fact engaged in unconstitutional conduct, they must show that they did so pursuant to an existing City policy, custom, or practice of which the City policymakers knew, which served as a moving force behind the conduct. *Id*. at 694; *Valle v. City of Houston*, 613

for pretrial detainees . . . ." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992). It is inappropriate for the conditions of confinement to operate to punish a person who has not been convicted of a crime. *Bell v. Wolfish*, 441 U.S. 520, 531-40 (1979). Yet those conditions may include restrictions attendant to the legitimate operational concerns of an incarcerating facility. *Id*.

Therefore, despite the City's challenge to the Eighth Amendment claim, the Court –for the moment—retains Plaintiffs' parallel complaint for due process violations during Ray Rosas' pretrial detention. Fact questions relevant to the assessment of such a claim have not been briefed or shown to be eliminated as a matter of law at this juncture. Unless eliminated by the requirements of municipal liability as set out below, those Fourteenth Amendment claims remain.

### C. Municipal Liability for Excessive Force, Poor Treatment of Pretrial Detainee, and Unlawful Seizure

#### 1. The Requirement of a Policy

The City seeks protection from liability for the actions of its employees or agents pursuant to the holding in *Monell v. New York Department of Social Services*, 436 U.S. 658, 694 (1978). It is well-settled that the City does not have respondeat superior liability for allegedly unconstitutional conduct of its law enforcement personnel. *Id*. at 691. Instead, to establish liability, Plaintiffs must not only show that the personnel in fact engaged in unconstitutional conduct, they must show that they did so pursuant to an existing City policy, custom, or practice of which the City policymakers knew, which served as a moving force behind the conduct. *Id*. at 694; *Valle v. City of Houston*, 613

F.3d 536, 541–42 (5th Cir. 2010). For purposes of this analysis, the Court will assume without deciding that there was unconstitutional police conduct and focus on whether there was a City policy behind it.

A policy can be an officially adopted statement, ordinance, regulation, or decision of the City's lawmaking officers or policy-making authority. *Id*. Plaintiffs do not assert such a formal policy. Instead, Plaintiffs' only claim to a City policy falls under the second manner of proof: "Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To constitute a widespread and persistent policy, Plaintiffs must show a large number[2] of very similar instances[3] occurring for so long or so frequently[4] that a pattern can be attributed to the policymaker.

A policymaker's failure to scrutinize a practice is insufficient. While it may make unconstitutional conduct more likely, such inadvertence is equally consistent with an employee maintaining constitutionally compliant conduct. It is thus not a moving factor behind unconstitutionality. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410-11 (1997). Instead, there must a conscious disregard of an obvious risk that the employee would subsequently inflict a particular constitutional injury. *Id*.

### 2. The Knock and Announce Requirement

Plaintiffs' claim that the City has an unconstitutional policy is based on an alleged widespread and persistent violation of the "knock and announce" requirement of search

---

[2] *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).
[3] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).
[4] *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).

and seizure. Fourth Amendment jurisprudence includes a "knock and announce" feature when executing a warrant at a residence. *Miller v. United States*, 357 U.S. 301, 309 (1958) (noting that the requirement existed in the common law as far back as fifteenth century England, reflecting the adage that a man's house is his castle). While that requirement carries a well-established exception for cases involving small amounts of narcotics that can be disposed of during a knock and announce delay, Plaintiffs argue that the drug disposal exception should not apply here, where CCPD had sufficient evidence to arrest Garcia without retrieving any drugs from the home. *Id*. at 309 (noting exceptions for destruction of evidence and peril of bodily harm); *United States v. Banks*, 540 U.S. 31, 41-43 (2003) (discussing the importance of the totality of the circumstances in applying exceptions to the knock and announce requirement); *Wilson v. Arkansas*, 514 U.S. 927, 937 (1995).

Likewise, there is an exception to the "knock and announce" requirement when the safety of the officers is threatened by a significant known risk of violence, such as when the persons in the residence are known to possess firearms. *Richards v. Wisconsin*, 520 U.S. 385, 395 (1997) (requiring facts to support reasonable suspicion that a risk of violence exception should apply); *United States v. Howard*, 106 F.3d 70, 74 (5th Cir. 1997) (same). Plaintiffs argue that the violence exception does not apply here because the investigating officer who provided the affidavit in support of the warrant did not have personal knowledge of any gun ownership and had not confirmed information to that effect, provided by his confidential informant.

Plaintiffs seek to assign liability to the City for the police officers' conduct in this

case because, rather than pursue an individualized assessment of the risk factors in this case, they relied on the City's acquiescence in a pattern or custom of making blanket exceptions to the knock and announce requirement any time the search and seizure involves a felony drug investigation. The Supreme Court disapproved of such blanket exceptions in *Richards v. Wisconsin, supra*, and the Fifth Circuit followed suit in *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012). The Supreme Court's concern was that blanket exceptions could easily accumulate and swallow the rule.

### 3. No Blanket Policy in CCPD Undermining the Knock and Announce Requirement

Plaintiffs allege that the CCPD leadership acquiesces in the SWAT Team's alleged blanket policy of both (a) failing to question and confirm the information in the warrant affidavit and risk-assessment matrix, and (b) using the full force of its resources as a default mode for executing all no-knock warrants in drug-related cases. To substantiate that claim, Plaintiffs cite exclusively to the testimony of CCPD command: Captain David Cook, Captain William Breedlove, and Assistant Chief of Police Mark Schauer. Without deciding whether these individuals qualify as policymakers who can bind the City, the Court considers whether their testimony supports the existence of the policies alleged.

According to David Cook, who is CCPD's Commander of the Emergency Response Unit,[5] the SWAT Team appropriately relies on the accuracy of observations and information gathered by the investigating officer. D.E. 61-15. That information is

---

[5] The Emergency Response Unit includes the Hostage Negotiation Team, the Dive Team, the Bomb Squad, and SWAT Team. D.E. 46-5.

communicated in the affidavit supporting the warrant and in the Search Warrant Classification Matrix, which is their risk-assessment tool.

> A. Once the warrant is turned over to us and we're requested and the matrix meets the standard and we're requested to run the warrant and the warrant is signed, we prepare an operations plan. And that discussion of whether there's a less evasive [sic] manner, whether that unit could have provided is not discussed by SWAT. We are – we are following the request of the unit who has requested our assistance.
>
> Q. The thoughts of a better way to do it is something that is done by that division that is requesting the warrant?
>
> A. That is correct.

D.E. 61-15, p. 23. Cook's testimony further acknowledges that there are, in fact, times when the referring unit discusses the particular needs for the execution of a warrant, such as whether a house needs to be hit. D.E. 61-15, p. 25.

Captain William Breedlove, the SWAT Team Executive Officer, testified to essentially the same facts, stating that they executed warrants on the basis of the investigating unit's information and request. D.E. 61-24. There is no evidence in the summary judgment record that Assistant Chief of Police Mark Schauer said anything different with respect to the information on which warrants were executed. D.E. 46-17.

Nothing in the testimony of the three officers on which Plaintiffs rely for this point supports the inference that an unconstitutional blanket policy is in effect for all drug-related warrants. The testimony does not show that all drug-related warrants are executed on a no-knock basis. The testimony does not show that they are executed without regard to whether there is evidentiary support for exigent circumstances. The testimony does

not discuss whether any drug-related warrants are uniformly executed on a full-throttle basis. Neither is there any evidence that the SWAT Team practices have ever been known to result in any unconstitutional search or seizure, excessive force, or poor treatment of a pretrial detainee aside from the allegations in this case.

Plaintiffs have not met their burden of proof to demonstrate any widespread and persistent unconstitutional instances of SWAT Team warrant executions. Not a single additional operation is offered as even questionable. This case, therefore, does not fall within the scope of *Bishop*, 674 F.3d at 467, which recognized that a blanket exception to the knock and announce rule for all drug-related warrants was not constitutional.

As highlighted by *Bishop*, whether a no-knock warrant is constitutionally permissible depends on an officer being able to point to specific facts to explain safety concerns or the need for preservation of evidence. *Id*. at 466. Here, the SWAT Team's use of the affidavit supporting the warrant as well as the risk-assessment matrix is an effort to communicate those specific facts. And Plaintiffs do not assert that the facts in the warrant and matrix used here were insufficient on the face of the documents.

Instead, they claim that errors or inaccuracies should have been discovered by a re-investigation of the referring unit's work. Yet Plaintiffs offer no authority for the suggestion that one arm of a police force cannot rely on the work of another. Rather, such reliance is the norm. *See, United States v. Ibarra—Sanchez*, 199 F.3d 753, 759—60 (5th Cir. 1999) (under the "collective-knowledge doctrine," one officer's personal knowledge of the facts can be imputed to others who rely on it in working the case).

Plaintiffs do not argue that reliance on the work of other departments is unreasonable because of some recurring problem with the information gathered. Such an argument would be contrary to the evidence of record. Commander Cook testified that Officer Andy Trevino, the case agent who supplied the facts to support the warrant and who filled out the matrix, was an experienced officer with integrity and a reputation for truthfulness. D.E. 61-15, p. 14. While Plaintiffs have raised a number of questions about Officer Trevino's representation of the facts underlying the no-knock warrant and matrix involved in this case, the evidence—at best—illustrates only a single occurrence of police error, which is insufficient to establish a widespread and persistent, unconstitutional practice.

### 4. Conclusion

Under *Monell*, even if CCPD got it wrong in this case, the City cannot be held liable absent a policy that is the moving force behind unconstitutional action. Plaintiffs have not satisfied their burden to raise a disputed issue of material fact on the only such policy they have claimed. Instead, Plaintiffs' own evidence shows that the SWAT Team executes no-knock warrants as requested by CCPD units, on the basis of individualized facts regarding exigent circumstances set out by investigating officers and as requested by referring units. Thus there is no blanket exception to the knock and announce rule or default mode involving overreaching of which to complain. The Court GRANTS IN PART the City's motion for summary judgment and DISMISSES all claims alleged against the City for excessive force, poor treatment of pretrial detainees (as previously carried forward), and unlawful seizure.

### D. Failure to Train

Plaintiffs allege liability against the City for failure to properly train the police force on the use of force in its operations, including having appropriate policies in place and teaching officers to properly interpret and follow those policies. The City seeks summary judgment on this claim because Plaintiffs cannot show that their training program is deficient or that the City is deliberately indifferent to any specific need for training relevant to the issues in this case.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Burns v. City of Galveston*, 905 F.2d 100, 103-04 (5th Cir. 1990).

> But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio,* 489 U.S. at 390.

The only failure to train complaint asserted in Plaintiffs' response is, "Somebody obviously has failed to train the Corpus Christi Police Department on the long-established requirements for a no-knock warrant or Investigator Trevino and the Corpus Christi Police Department did not care. Proper training would help." D.E. 61, p. 4. The Supreme Court warned against the acceptance of such a claim.

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton, Ohio,* 489 U.S. at 390–91.

Attached to Assistant Chief Schauer's and Captain Donnie Mersing's affidavits are excerpts from the CCPD Policy Manual. D.E. 46-17. They include section 200 on the use of force, section 306 on search and seizure procedures and temporary detentions, and section 306.4, including in its search protocol the directive to carry out searches "with due regard and respect for private property interests and in a manner that minimizes damage." D.E. 46-17, p. 25; D.E. 46-18, pp. 17-22, 32-34. "Members of this Department will conduct searches in strict observance of the constitutional rights of persons being searched. All seizures by this Department will comply with relevant federal and state law governing the seizure of persons and property." Policy 306.2, D.E. 46-18, p. 32.

According to the affidavit of Captain Mersing, who is in charge of training, all CCPD officers receive training on the constitutional limits restricting the scope and

manner of searches and seizures, the use of force, and the treatment of detainees. That training meets and exceeds Texas state requirements, including copious hours of instruction, on-the-job field training, one-on-one mentoring, and in-service training. D.E. 46-18. Without a specific showing of facts to support a deliberate indifference finding, a City is protected from liability if it relies on a training program that meets state standards. *Benavides v. Cty. of Wilson*, 955 F.2d 968, 974 (5th Cir. 1992).

Plaintiffs have offered no evidence that this training is insufficient or fails to cover the specific knock and announce issues on which they rely. Neither do their expert reports (D.E. 61-13, 61-14) address any particular defect in the training program. While they complain of failures in gathering or assessing the information on which the officers relied in planning the SWAT Team operation, evidence of a one-time error does not rise to a level that places the entire training program in question. *See City of Canton, Ohio*, 489 U.S. at 390–91; *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (evidence of a single incident is ordinarily insufficient to establish a deficient policy).

Plaintiffs have failed to raise a disputed issue of material fact that the City failed to train officers in a manner that was deliberately indifferent to the rights of the public. Consequently, the Court GRANTS IN PART the City's motion for summary judgment and DISMISSES Plaintiffs' failure to train claim.

E.  **Failure to Supervise**

Plaintiffs also allege that the City failed to ensure proper supervision of its police force. To establish a failure to supervise claim, Plaintiffs must prove that: (1) the officers were not supervised; (2) there is a causal connection between the alleged failure to

supervise and the alleged violation of Plaintiffs' rights; and (3) the failure to train or supervise constituted deliberate indifference to Plaintiffs' constitutional rights. *Brumfield v. Hollins*, 551 F.3d 322, 332 (5th Cir. 2008). The City asserts that it is entitled to summary judgment eliminating this claim because an appropriate chain of command was in place throughout the CCPD operations. D.E. 46-5. Moreover, it claims that there is no evidence of deliberate indifference.

Plaintiffs do not address this claim in their response. They have not directed this Court to any evidence that supervision was lacking or that the City's attitude toward it amounted to deliberate indifference. The Court GRANTS IN PART the City's motion for summary judgment and DISMISSES Plaintiffs' claim for failure to supervise.

**F. Failure to Discipline**

Plaintiffs assert a claim against the City for failure to discipline its police officers, thus creating a policy of ratifying unconstitutional conduct. In their complaint, Plaintiffs reference only the failure to discipline the officers involved in the SWAT Team operation at issue in this case. D.E. 1. The City seeks summary judgment dismissing this claim because it, in fact, enforces its policies through disciplinary procedures; it is not aware of any facts or unconstitutionality warranting disciplinary measures against the officers involved in this case; and one incident does not establish a City policy. D.E. 46, 46-17; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988); *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986) (a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality). Indeed, no

claims of excessive force triggering disciplinary measures were lodged against the officers for this incident prior to filing this suit. D.E. 46-17.

Again, Plaintiffs have not responded to this issue with evidence or arguments. The Court GRANTS IN PART the City's motion for summary judgment and DISMISSES Plaintiffs' claims against it for failure to discipline.

## CONCLUSION

For the reasons set out above, the Court GRANTS the City's motion for summary judgment (D.E. 46) in its entirety and DISMISSES all of the claims Plaintiffs have asserted against the City, with the exception of the state law malicious prosecution claim, which was not addressed in its motion.

ORDERED this 27th day of December, 2018.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE